MURDOCK, Justice.
 

 John P. Morgan and Darlene K. Morgan appealed from a summary judgment in favor of Safeway Insurance Company of Alabama, Inc. (“Safeway”), denying the Morgans’ underinsured-motorist (“UIM”) insurance claims against Safeway on the ground that the Morgans failed to obtain Safeway’s consent before settling their action against the underinsured motorist. The Alabama Court of Civil Appeals affirmed the trial court’s judgment on the ground that the Morgans failed to give Safeway reasonable notice of their intent to settle the underlying action,
 
 Morgan v. Safeway Insurance Co. of Alabama,
 
 13 So.3d 381 (Ala.Civ.App.2007).
 

 In February 2004, the Morgans were injured when their vehicle collided with a vehicle driven by Suzanne Sheffield. The Morgans were insured under an insurance policy with Safeway that included UIM coverage. The Morgans sued Sheffield seeking damages for the injuries they sustained in the collision. In May and June 2005, the Morgans’ counsel communicated with Safeway and its counsel concerning the Morgans’ claims; he advised Safeway’s counsel that he anticipated that the UIM coverage would be at issue.
 

 On June 1, 2005, the Morgans’ counsel forwarded to Safeway’s counsel copies of the pleadings in the action against Sheffield. On that same day, Safeway sent a letter to its counsel stating that the Morgans’ counsel “has a ways to go before getting to us.” The Morgans did not join Safeway as a party to their action against Sheffield, and Safeway did not elect to join that action. Following these initial communications with Safeway, the Morgans
 
 *387
 
 began conducting discovery in their action against Sheffield.
 

 On October 17, 2005, the Morgans’ counsel notified Safeway’s counsel by letter of the fact of a proposed settlement. The letter advised Safeway that Sheffield’s insurer had offered to pay its policy limits, $20,000 per person; the letter did not state any other terms of the proposed settlement. The letter made a demand on Safeway for payment of unspecified additional sums under the UIM portion of the policy. Delivered to Safeway’s counsel with the notice were copies of the Morgans’ medical records. This was the first time the Morgans provided Safeway these records, which addressed unrelated preexisting conditions and ailments, including, but not limited to, bipolar disorder, post-traumatic stress syndrome, surgeries, and degenerative disk disease. The October 17 letter to Safeway did not set forth a proposed date for executing the settlement with Sheffield, a deadline or target date by which Safeway should respond to the letter, or any suggestion that time was of the essence.
 

 Safeway’s counsel promptly informed Safeway that a settlement had been proposed and forwarded to Safeway copies of the Morgans’ medical records. By letter dated October 18, 2005, Safeway’s counsel informed the Morgans’ counsel that he expected a response within “the next few days.” On October 21, 2005, Safeway informed its counsel that it wanted to take the depositions of some doctors referenced in the Morgans’ medical records; Safeway’s counsel did not inform the Morgans’ counsel of this desire.
 

 On October 27, 2005, the Morgans accepted the settlement offer and executed a general release. There apparently was no communication between Safeway (or its counsel) and the Morgans’ counsel between October 18, 2005, and October 27, 2005. On November 2, 2005, the Morgans and Sheffield filed a joint stipulation resulting in the dismissal of the action against Sheffield. Safeway learned about the completed settlement in November 2005 by monitoring the filings in the Baldwin Circuit clerk’s office.
 

 On January 11, 2006, Safeway denied the Morgans’ UIM claims, asserting that the Morgans had violated a policy provision requiring Safeway’s consent to any settlement of the underlying claim against the underinsured motorist. In February 2006, the Morgans filed the present action against Safeway, alleging breach of contract and bad-faith denial of their UIM claims. In March 2006, the Morgans filed a motion for a partial summary judgment on the issue of Safeway’s contractual liability. In response, Safeway filed a motion for a summary judgment in its favor as to all the Morgans’ claims, asserting that the Morgans had waived their right to recover UIM benefits because (1) they failed to obtain Safeway’s consent to the settlement, (2) they failed to provide adequate information as to the terms of the settlement, and (3) they failed to give Safeway a reasonable opportunity to respond to the proposed settlement.
 

 On June 7, 2006, the trial court entered an order denying the Morgans’ motion for a summary judgment and granting Safeway’s motion for a summary judgment. The trial court determined that the Morgans were not entitled to recover UIM benefits from Safeway because their notice of the proposed settlement did not satisfy the requirements set forth in
 
 Lambert v. State Farm Mutual Automobile Insurance Co.,
 
 576 So.2d 160 (Ala.1991). Specifically, the trial court concluded
 

 “that while [the Morgans] provided notice of claim to Safeway, there is no evidence of consent. The documents provided by [the Morgans] to Safeway
 
 *388
 
 did not include the proposed release; disclose the terms of the release; request Safeway’s consent; or offer Safeway an opportunity to review or participate in the settlement.”
 

 The trial court did not specifically address the issue whether 10 days’ notice was sufficient under the facts of this case. The Morgans appealed to this Court, which transferred the case to the Alabama Court of Civil Appeals pursuant to Ala.Code 1975, § 12-2-7(6).
 

 The Court of Civil Appeals affirmed the judgment. That court concluded that the Morgans failed to comply with the “reasonable time” standard established in
 
 Lambert
 
 because they settled their claims against the alleged tortfeasor after giving Safeway “no more than 10 days[’] ... notice of a potential settlement and UIM claim.”
 
 Morgan,
 
 13 So.3d at 385. The court also stated that, absent “compelling circumstances,” 30 days was a reasonable time for a response by a UIM carrier. 13 So.3d at 385.
 

 In
 
 Lowe v. Nationwide Insurance Co.,
 
 521 So.2d 1309, 1310 (Ala.1988), this Court established a process for balancing the rights of the UIM insurer and its insured by (1) requiring that the UIM insurer be notified of, or joined as a party in, the action against the alleged tortfeasor and (2) allowing the UIM carrier to elect whether to participate in that action. Regardless of whether it elects to participate, the UIM insurer would be bound by the
 
 determination of the fact-finder
 
 as to liability and damages.
 
 Lowe
 
 did not address any issues regarding a proposed settlement between the UIM insured and the alleged tortfeasor.
 

 Settlements and the UIM carrier’s sub-rogation rights were addressed by this Court in
 
 Lambert,
 
 which provided a “road map” governing settlements of the underlying action between the insured and the alleged tortfeasor in cases involving a UIM carrier.
 
 Lambert
 
 requires that, where benefits are contractually conditioned upon the insurer’s consent to a settlement between the insured and the alleged tortfea-sor, the settlement should not take place until the UIM carrier has been given notice of the settlement and has had a reasonable time to investigate and to act on an insured’s UIM claim. The
 
 Lambert
 
 Court noted that the purpose of the guidelines that it articulated
 

 “is to protect the underinsured motorist insurance carrier’s subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the tortfeasor’s liability insurer at the carrier’s expense.”
 

 576 So.2d at 167.
 

 The
 
 Lambert
 
 guidelines are as follows:
 

 “(1) The insured, or the insured’s counsel, should give notice to the under-insured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured’s damages may exceed the tortfeasor’s limits of liability coverage.
 

 “(2) ... [I]f the settlement would release the tort-feasor from all liability, then the insured ... should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
 

 “(3) ... If the insured gives the un-derinsured motorist insurance carrier
 
 notice of the claim for underinsured motorist benefits,
 
 ...
 
 the carrier should immediately begin investigating the claim, [and] should conclude such investigation within a reasonable time
 

 “(4) The insured should not settle with the tort-feasor
 
 without first allowing the underinsured motorist
 
 insur-
 
 *389
 

 anee carrier a reasonable time within which to investigate
 
 the insured’s claim and to notify its insured of its proposed action.
 

 “(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfea-sor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor’s insurer.
 

 “(6) If the underinsured motorist insurance carrier wants to protect its sub-rogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier’s insured, advance to its insured an amount equal to the tort-feasor’s settlement offer.”
 

 576 So.2d at 167 (emphasis added).
 

 The only issue before us in the present case is whether Safeway should be deemed to have waived its right to consent to, or to object to, the proposed settlement between the Morgans and Sheffield by not responding to the Morgans’ claims for UIM benefits during the 10-day period from October 17, 2005, when that claim was made, to October 27, 2005, when the settlement was consummated.
 
 [1]
 
 In
 
 Allstate Insurance Co. v. Beavers,
 
 611 So.2d 348, 352 (Ala.1992), this Court held that, in the ordinary case, the relevant notice is not notice of the action against the alleged tortfeasor, but notice of the intent to settle that action and to pursue the UIM coverage for additional damages. The facts of the present case do not present an exception to the principle set forth in
 
 Beavers,
 
 and we therefore conclude that the notice period began on October 17, 2005, when the Morgans’ counsel notified Safeway’s counsel of the proposed settlement.
 

 As noted in
 
 Lambert,
 
 the reasonableness of the notice to the UIM insurer depends on the particular facts and circumstances of each case.
 
 Lambert,
 
 576 So.2d at 167 (a notice “must take into consideration the facts and circumstances of each individual case”). In their briefs to this Court, the parties do not focus in particular on the question whether, as a general rule, 30 days (or any other period) should be established as a presumptively reasonable time for an insurer to respond to a claim for UIM benefits. Nor is it necessary for our decision today to address this issue; we therefore decline for purposes of this case to adopt the holding of the Court of Civil Appeals as to this issue. The issue the parties do emphasize in their briefs, and the one we do decide, is whether, under the particular circumstances of this case, Safeway should be deemed to have waived its right to object to the proposed settlement by virtue of not doing so during the 10-day period between October 17, when Safeway was notified that Sheffield had made a settlement offer, and October 27, when the Morgans accepted that offer. We conclude that it should not.
 

 We first note that the October 17 letter did not request a response by any particular date. Nothing in the record suggests that there was any reason, such as an approaching trial, that impelled the Morgans to consummate the settlement
 
 *390
 
 or to remove a contingency such as the UIM insurer’s approval, by October 27, or by any other specific date. Even if such a reason had existed, it was not communicated to Safeway so that it would know of the need to respond accordingly. Second, the Morgans knew that Safeway intended to make a decision “within a few days,” but they failed to follow up when they did not receive a response. Third, accompanying the October 17 claim for UIM benefits, for the first time, were copies of various medical records of the Morgans disclosing conditions and ailments unrelated to the automobile collision that apparently raised issues as to liability, the amount of damages, and causation.
 

 Based on the foregoing, and considering the principles set forth in
 
 Lambert,
 
 we agree with the Court of Civil Appeals that Safeway should not be deemed to have waived its rights under its policy to consent to or object to the proposed settlement. Accordingly, as the Court of Civil Appeals concluded, “the failure of the insureds to obtain Safeway’s consent barred their claim for UIM benefits, and the trial court correctly entered the summary judgment in favor of Safeway.” 13 So.3d at 385. Therefore, we affirm the judgment of the Court of Civil Appeals.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, STUART, PARKER, and SHAW, JJ., concur.
 

 LYONS, SMITH, and BOLIN, JJ., concur in the result.
 

 [1]
 

 . The Morgans did not argue to the trial court, and do not argue to this Court, (1) that their failure to provide reasonable notice to Safeway was excusable, or (2) that Safeway did not show that it was prejudiced by that failure.
 
 See Overstreet v. Safeway Ins. Co. of Alabama,
 
 740 So.2d 1053, 1060-61 (Ala. 1999) (Lyons, J., concurring in the rationale in part and concurring in the result).