MURDOCK, Justice.
 

 Ginger Bailey appeals from a summary judgment entered by the Tuscaloosa Circuit Court against her and in favor of Progressive Specialty Insurance Company (“Progressive”) on her claims seeking uninsured-motorist benefits and alleging breach of contract and bad-faith failure to pay. We affirm the judgment of the trial court.
 

 I. Facts and Procedural History
 

 On June 3, 2006, Bailey was a passenger in an automobile that was struck by a van being driven by Luvert Caver. The accident occurred in the City of Tuscaloosa. After the collision, Caver fled the scene. As a result of the accident, Bailey suffered physical injui’ies, including fractured vertebrae in her back, and she incurred medical bills for the treatment of those injuries. Bailey had an automobile insurance policy with Progressive that provided uninsured-motorist (“UM”) coverage up to $50,000 for a single person for one accident. She timely informed Progressive of the accident.
 

 On October 28, 2006, Bailey informed Progressive that she had outstanding medical bills from the accident and that she was filing a claim under her policy for UM benefits to pay the medical bills. It is undisputed that Bailey had already settled with a “primary” UM insurer, ALFA Insurance, for $20,000.
 

 On May 17, 2007, Bailey sued Caver and fictitiously named parties, alleging against various parties negligence, wantonness,
 
 *589
 
 and negligent entrustment. It is undisputed that Bailey timely informed Progressive of the filing of the action against Caver.
 

 On June 12, 2007, Progressive filed a motion to intervene in the action in order to “evaluate its exposure for possible UM benefits for the plaintiff.” On the same date, Progressive filed what it styled to be a “Complaint in Intervention” in which it asked the trial court to “determine that [Bailey] is not entitled to recover UM benefits from [Progressive] or, in the alternative, [Progressive] requests the court to enter a judgment in its favor and against the defendant Caver to the extent of any payment made by Progressive to [Bailey].”
 
 [1]
 
 The trial court granted Progressive’s motion to intervene.
 

 On August 24, 2007, Progressive filed a cross-claim against Caver in which it averred that “[i]f Progressive is liable to [Bailey] for UM benefits, it is liable because [Bailey] is legally entitled to recover damages from Caver as a result of the accident.” Accordingly, Progressive sought a judgment against Caver for any amount it might be forced to pay Bailey as a result of the accident.
 

 Bailey attempted service upon Caver several times, eventually serving Caver by publication. Caver never responded to the summons or to Bailey’s complaint. Bailey also ran a check for vehicle-registration information on Caver, attempted to obtain Caver’s insurance information from the accident report, and telephoned the State Department of Insurance in order to locate insurance information pertaining to Caver. All of Bailey’s inquiries concerning Caver failed to produce information on Caver’s insurance status or to cause Caver to make any appearance in the Tuscaloosa Circuit Court to defend the claims against him. Accordingly, on December 27, 2007, Bailey filed a motion for a default judgment against Caver. The trial court entered a default judgment against Caver the following day.
 

 On January 22, 2008, Bailey filed a motion to set a hearing for the determination of damages on the default judgment. She filed an affidavit averring that her damages amounted to $125,000 for the “injuries and damages to her person and incurred expense for the associated medical treatment, as well as great pain and suffering.”
 

 On January 23, 2008, Progressive filed a “Motion to Set Aside Entry of Default Judgment.” In the motion, Progressive sought from the trial court an order “to set aside the default judgment entered against Luvert Caver ... to the extent that [Bailey] seeks to bind Progressive by that judgment.” Following a hearing on Bailey’s motion for a determination of damages and Progressive’s motion to set aside the default judgment, the trial court on January 30, 2008, entered an order denying Progressive’s motion and setting the amount of damages against Caver. The order provided, in pertinent part:
 

 “This Court having reviewed both briefs finds the cases cited by [Bailey] specifically,
 
 Lowe v. Nationwide Ins. Co.,
 
 521 So.2d 1309 (Ala.1988), and
 
 Champion Ins. Co. v. Denney,
 
 555 So.2d 137 (Ala.1989), to be the authority in this matter and thus binding upon the parties.
 

 “It is therefore ORDERED, ADJUDGED, and DECREED that this
 
 *590
 
 Court’s Order of Default Judgment against Defendant Caver of December 28, 2007, was proper and therefore, Progressive’s Motion to Set Aside Entry of Default is denied.
 
 However, this court specifically finds and orders that the defendant Progressive Specialty Insurance Company is not bound by the default judgment.
 

 “This Court after reviewing [Bailey’s] Affidavit of Damages further finds that the amount stated of $125,000 for the bodily injury claim is fair and reasonable given the nature and conduct of [Caver] as well as the severity of the injuries to [Bailey]. And thus:
 

 “It is further ORDERED, ADJUDGED, and DECREED that damages are hereby set against Defendant Luvert Caver in the amount of $125,000, all costs taxed to [Caver].”
 

 (Capitalization in original; emphasis added.)
 

 On March 31, 2008, Progressive filed a motion for a default judgment on its cross-claim against Caver. On May 15, 2008, the trial court entered an order of default against Caver on Progressive’s cross-claim.
 

 On May 30, 2008, Bailey filed what she styled a “Supplemental Complaint” pursuant to Rule 15(d), Ala. R. Civ. P.,
 
 [2]
 
 in which she brought claims against Progressive for UM benefits, alleging breach of contract and bad-faith failure to pay the UM benefits she alleged were due to her based on the default judgment. In the complaint, Bailey noted that Progressive had intervened in her action against Caver, that Progressive had made legal filings and conducted discovery in the action, and that Progressive was aware of the default judgment entered against Caver in the amount of $125,000 and yet had intentionally refused to pay the amount of $50,000, the maximum payable for UM benefits under Bailey’s insurance policy. Subsequently, Progressive filed a motion to dismiss Bailey’s supplemental pleading, but the trial court denied the motion and accepted Bailey’s “supplemental complaint.”
 

 On June 17, 2008, Progressive filed what it styled as a “Counterclaim” against Bailey in which it averred that “[i]t is Progressive’s position that Bailey has not established she is ‘legally entitled to recover’ and is not yet entitled to benefits under the Progressive policy as a result of injuries she attributes to this accident,” and that “this court has already found that Bailey’s default judgment against Caver is not binding upon Progressive.” Progressive requested that the trial court issue a judgment declaring that “the default judgment entered against Caver by Bailey is not binding upon Progressive.”
 

 On June 25, 2008, Bailey filed her answer to Progressive’s “counterclaim” in which she argued that the trial court’s citation of
 
 Lowe v. Nationwide Insurance Co.,
 
 521 So.2d 1309 (Ala.1988), and
 
 Champion Insurance Co. v. Denney,
 
 555 So.2d 137 (Ala.1989), as binding authority in its order denying Progressive’s motion to set aside the default judgment meant that Progressive is bound by the finding of liability and the damages award in the default judgment. On December 14, 2008, Progressive filed its answer to Bailey’s “supplemental complaint” in which it denied all the material allegations in the complaint.
 

 On January 29, 2009, Progressive filed a motion for a summary judgment as to
 
 *591
 
 Bailey’s “supplemental complaint.” In its brief accompanying its motion, Progressive argued that it was “entitled to a summary judgment because it is not liable under the facts of this case” in that the trial court had stated that the default judgment was not binding upon Progressive and Progressive was contesting liability and damages. In support of its motion, Progressive filed an affidavit from one of its claims adjusters, Bill Adams, who noted that Progressive had obtained Bailey’s medical records during discovery in her action against Caver. Adams averred that Bailey’s “medical bills were mostly paid by Blue Cross/Blue Shield of Alabama” and that “Blue Cross is asserting a subrogation claim in the amount of about $858.” He also claimed that based on Bailey’s medical records Progressive “determined that the $20,000 settlement with ... Alfa contributed significantly toward compensating Bailey for her damages” but that Progressive had “nonetheless offered Bailey an additional $10,000 in settlement in order to avoid excessive litigation expenses.”
 
 [3]
 
 Adams noted that Bailey had rejected the settlement offer and instead filed her “supplemental complaint.”
 

 On March 5, 2009, Bailey filed her response to Progressive’s motion for a summary judgment. Bailey reiterated the argument from her answer to Progressive’s “counterclaim” that Progressive was bound by the default judgment against Caver because the fact-finder had determined liability and damages to a certainty, which triggered payment of UM benefits under the insurance policy.
 

 On May 25, 2009, the trial court entered an order granting Progressive’s motion for a summary judgment. The order provided, in pertinent part:
 

 “The Court has reviewed all submissions in support of and in opposition to the motion, including the case of
 
 Ex parte Safeway Ins. Co. of Alabama, Inc.,
 
 990 So.2d 344 (Ala.2008), as argued by [Progressive]. Based upon those submissions, this Court finds that the motion is due to be and hereby is GRANTED, and the claims asserted against Progressive in [Bailey’s] supplemental complaint are dismissed without prejudice.
 

 “This dismissal is being made under the authority of
 
 Ex parte Safeway Ins. Co. of Alabama,
 
 wherein the Alabama Supreme Court held that a circuit court does not have subject-matter jurisdiction over an uninsured motorist coverage claim until the alleged tortfeasor’s liability is established and damages are fixed. While this Court has questions regarding the impact of such a rule on [UM] cases, the opinion appears controlling here. Since neither liability nor damages have been established here, this Court finds that it does not have subject-matter jurisdiction. Accordingly, [Bailey’s] claims against Progressive are dismissed without prejudice.”
 

 (Capitalization in original.)
 

 On June 5, 2009, Bailey filed a motion to alter, amend, or vacate the trial court’s summary judgment, and Progressive filed a response to that motion on July 17, 2009. The trial court never ruled upon Bailey’s motion, and, as a result, the motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., on September 3, 2009. Bailey filed a timely notice of appeal on September 17, 2009.
 

 On November 2, 2009, Progressive filed with this Court a motion to dismiss Bailey’s appeal on the ground that she had appealed from a nonfinal judgment. Specifically, Progressive averred that its
 
 *592
 
 “complaint in intervention, cross-claim, and counterclaim remain pending before the court. Therefore, the trial court’s order did not adjudicate all the issues before it.”
 

 On November 24, 2009, this Court issued an order stating that “[i]t appealed] to the Court that some claims, including claims for declaratory relief, have not been adjudicated.” Consequently, we remanded the cause to the trial court and gave it the option: (1) of making its summary judgment a final order pursuant to Rule 54(b), Ala. R. Civ. P.; (2) of adjudicating the remaining claims, thus making its “interlocutory order of May 25, 2009, appeal-able”; or (8) of doing nothing, in which case this Court would dismiss Bailey’s appeal as being from a nonfinal judgment.
 

 On November 25, 2009, the trial court entered an order certifying its summary judgment in favor of Progressive as a final judgment and stating that, pursuant to Rule 54(b), Ala. R. Civ. P., there was no just cause for delaying the appeal of said order.
 
 [4]
 
 On December 14, 2009, this Court entered an order denying Progressive’s motion to dismiss Bailey’s appeal.
 

 II. Standard of Review
 

 Our standard of review on an appeal of a ruling granting a motion for a summary judgment is well settled.
 

 “ ‘ “We review a summary judgment de novo. We apply the same standard of review as the trial court in determining whether the evidence presented to the trial court demonstrated the existence of a genuine issue of material fact. A summary judgment is proper where ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ” ’ ”
 

 Tanner v. State Farm Fire & Cas. Co.,
 
 874 So.2d 1058, 1063 (Ala.2003) (quoting
 
 Slay v. Keller Indus., Inc.,
 
 823 So.2d 623, 624-25 (Ala.2001) (citations omitted), quoting in turn
 
 Northwest Florida Truss, Inc. v. Baldwin County Comm’n,
 
 782 So.2d 274, 276 (Ala.2000)).
 

 III. Analysis
 

 In one sense, the parties’ arguments on appeal are straightforward. Bailey in essence contends that, under the authorities of
 
 Lowe
 
 and
 
 Champion,
 
 a genuine issue of material fact exists concerning Progressive’s liability on the claims in her “supplemental complaint” because a default judgment in the amount of $125,000 against Caver has been entered in her favor. Progressive responds that the trial court held that Progressive was not bound by the default judgment, that there is a dispute over liability and damages, and that therefore under
 
 Ex parte Safeway Insurance Co. of Alabama, Inc.,
 
 990 So.2d 344 (Ala.2008), Bailey’s claims of breach of contract and bad-faith failure to pay are not ripe
 
 *593
 
 for adjudication. Actions for UM benefits are anything but straightforward, however, so evaluating the parties’ arguments involves an exacting analysis.
 

 We start with the understanding that
 

 “[ujninsured motorist coverage in Alabama is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be ‘legally entitled’ to collect — that is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled.”
 

 LeFevre v. Westberry,
 
 590 So.2d 154, 159 (Ala.1991). Thus, the plaintiffs claim for UM benefits is dependent upon a determination, that is binding on the UM-insurance carrier, as to the extent, if any, of the tortfeasor’s liability to the plaintiff.
 

 This Court has made it clear that, although the plaintiffs “legal[ ] entitlement] to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom,” § 32-7-23(a), Ala.Code 1975, is dependent upon establishing the tortfeasor’s fault and the certainty of damages, the claim for UM benefits is based on the contractual obligations of the insurance policy. See, e.g.,
 
 Ex parte Barnett,
 
 978 So.2d 729, 734 (Ala.2007) (observing that “a UM insurance carrier’s liability to the insured is based solely on its contractual obligations as laid out in the policy” and that, “[ajlthough the tortfeasor’s liability triggers the insurer’s obligation to pay, that liability serves only to establish that the insured ‘is entitled to recovery under the terms of the policy.’ ” (quoting
 
 Howard v. Alabama Farm Bureau Mut. Cas. Ins. Co.,
 
 373 So.2d 628, 629 (Ala.1979))).
 

 This Court has provided a specific process that must be followed for both the insured and the UM-insurance carrier to protect their rights when the insured wishes to make a claim for UM benefits in connection with an action by the insured against the alleged tortfeasor:
 

 “A plaintiff is allowed either to join as a party defendant his own liability insurer in a suit against the underinsured motorist or merely to give it notice of the filing of the action against the motorist and of the possibility of a claim under the underinsured motorist coverage at the conclusion of the trial. If the insurer is named as a party, it would have the right, within a reasonable time after service of process, to elect either to participate in the trial (in which case its identity and the reason for its being involved are proper information for the jury), or not to participate in the trial (in which case no mention of it or its potential involvement is permitted by the trial court). Under either election, the insurer would be bound by the factfinder’s decisions on the issues of liability and damages. If the insurer is not joined but merely is given notice of the filing of the action, it can decide either to intervene or to stay out of the case. The results of either choice parallel those set out above — where the insurer is joined as a party defendant.”
 

 Lowe,
 
 521 So.2d at 1310 (emphasis omitted). This procedure is applicable to claims seeking both uninsured- and under-insured-motorist benefits. E.g.,
 
 Ex parte State Farm Mut. Auto. Ins. Co.,
 
 674 So.2d 75 (Ala.1995) (applying the
 
 Lowe
 
 procedure to claims involving UM benefits);
 
 *594
 

 Driver v. National Sec. Fire & Cas. Co.,
 
 658 So.2d 390 (Ala.1995) (same).
 

 The above-described procedure was agreed to by this Court in
 
 Lowe
 
 in order to accommodate three competing interests:
 

 “1) that of protecting the right of the insurer to know of, and participate in, the suit; 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit ...; and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance.”
 

 521 So.2d at 1309.
 

 In this case, Bailey chose to forgo her right initially to file claims against the alleged tortfeasor and the UM carrier in the same action; she filed an action against only the alleged tortfeasor, Caver, and provided timely notice of the action to her UM-insurance carrier, Progressive. In order to protect its interests, as the
 
 Lowe
 
 Court recognized it had a right to do, Progressive elected to intervene in the action.
 

 Progressive argues that it was not bound by the default judgment and the damages award of $125,000 assessed against Caver. Progressive argues that “there was no fact-finding on the issues of liability and damages” because the trial court simply entered a default judgment. Progressive notes that this Court in
 
 Ex parte Progressive Specialty Insurance Co.,
 
 985 So.2d 897 (Ala.2007), held that the plaintiffs underinsured-motorist-insurance carrier was not bound by a settlement between the plaintiff and the tortfeasor’s liability insurer because “there has been no
 
 fact-finding
 
 on the issues of liability and damages as underscored in
 
 Lowe.”
 
 985 So.2d at 899.
 

 Bailey responds by citing
 
 Champion Insurance Co. v. Denney,
 
 555 So.2d 137 (Ala.1989). In
 
 Champion,
 
 the plaintiff, Dianna Denney, did not name her UM-insurance carrier, Champion, in her action against the uninsured tortfeasor, but she did provide Champion notice of the action. Champion
 
 elected not to intervene
 
 or otherwise to participate in the action. Den-ney obtained a default judgment against the tortfeasor in the amount of $100,000. Denney then filed a separate action against Champion seeking UM benefits. The trial court entered a summary judgment against Champion based upon the previous default judgment against the tort-feasor. On appeal, this Court concluded that the default judgment was binding upon Champion, explaining in part:
 

 “The insured in this case obtained a valid and enforceable judgment against the uninsured motorist. An insurer, however, should not be bound by such a judgment unless it had full notice and adequate opportunity to intervene and present any defenses and arguments necessary to protect its position. We are of the opinion that the insurer in this case had such notice and opportunity.”
 

 555 So.2d at 139-40.
 

 Progressive argues that
 
 Champion
 
 stands for the proposition that a UM-insurance carrier is bound by a default judgment only if the carrier is provided notice of the insured’s action against the tortfeasor and it elects not to participate in the action. This case is different, Progressive contends, because it did intervene in the action in order to exercise its right to defend its own interests. We agree.
 

 As contemplated by
 
 Lowe,
 
 a UM-insurance carrier has the right to intervene and defend its own interests, rather than choosing to rely upon the alleged tortfea-sor to defend the carrier’s interest. This includes the right to defend against the entry of any default judgments that would be binding upon the carrier and, if successful in doing so, thereafter to defend
 
 *595
 
 against the merits of the plaintiffs claims at a trial in which the plaintiff seeks to prove, as against the UM-insurance carrier, the plaintiffs entitlement to recover damages as a result of tortious conduct by the alleged tortfeasor. The plaintiff in this case, Bailey, after obtaining a default judgment that by its terms was binding against the alleged tortfeasor but
 
 not
 
 against the UM-insurance carrier, had every right to prosecute her claims on the merits against the carrier. Bailey has not attempted to do that in this case, however. Instead, Bailey has attempted to rely solely on the existence of the default judgment she obtained against the alleged tortfeasor. For its part, Progressive had every right to, and successfully did, defend against that default judgment insofar as it would bind Progressive. The trial court agreed that the default judgment would not bind Progressive and entered an order to that effect. Thereafter, Bailey failed to do what she had a right to do — pursue her claim against Progressive on the merits — choosing instead another attempt to force Progressive to make payment under a default judgment, a default judgment the trial court had already determined was not applicable against Progressive.
 

 We do not agree that the trial court lacked subject-matter jurisdiction over the claims by Bailey that remained pending against Progressive in the wake of the trial court’s entry of a default judgment in favor of Bailey against the tortfeasor.
 
 [5]
 
 Nonetheless, by limiting herself to a claim against Progressive based solely on that default judgment (which the trial court had determined was not binding on Progressive), rather than seeking to prove her entitlement to recover on the merits, Bailey was attempting to pursue a claim against Progressive that was not cognizable. We therefore affirm the judgment of the trial court dismissing Bailey’s claims against Progressive.
 

 AFFIRMED.
 

 COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.
 

 [1]
 

 . Under the procedure contemplated in
 
 Lowe v. Nationwide Insurance Co.,
 
 521 So.2d 1309, 1310 (Ala.1988), the insurance carrier is either named as "a party defendant” by the plaintiff or may intervene in that posture. Accordingly, Progressive’s "complaint in intervention” seeking a declaration that it is not liable to Bailey is properly considered a counterclaim against Bailey.
 

 [2]
 

 . Rule 15(d), Ala. R. Civ. P., provides, in part, that, "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.”
 

 [3]
 

 . The record reflects that Progressive made its offer of settlement on September 17, 2007.
 

 [4]
 

 . It appears that the effect of the trial court’s ruling on Progressive's motion for a summary judgment was that nothing was left to be adjudicated. Progressive’s "Complaint in Intervention” merely asked the trial court to conclude that "[Bailey] is not entitled to recover UM benefits from [Progressive],” which the trial court did when it granted Progressive's motion for a summary judgment. Its "counterclaim” against Bailey merely asked the trial court for a declaration that "the default judgment entered against Caver by Bailey is not binding upon Progressive.” The trial court stated as much in its order denying Progressive's motion to set aside the default judgment against Caver. Finally, Progressive's cross-claim against Caver became relevant only if Bailey recovered from Progressive. The trial court already had entered a default against Caver on Progressive’s cross-claim, but once the trial court dismissed Bailey’s claims against Progressive, Progressive’s cross-claim was effectively mooted.
 

 [5]
 

 . In
 
 Safeway,
 
 this Court held that where the damages recoverable against the alleged tort-feasor had not been established, a claim alleging “bad faith” against a UM-insurance carrier lacked "ripeness,” and, therefore, the trial court lacked subject-matter jurisdiction as to such a claim. 990 So.2d at 351-53. (The author of the present opinion disagreed with this holding, expressing the view that the issue was not one of ripeness implicating subject-matter jurisdiction but merely the inability of the plaintiff to prove the elements of her bad-faith claim. 990 So.2d at 353 (Murdock, J., concurring in the result).) Unlike
 
 Safeway,
 
 the present case is not limited to a bad-faith claim, but also involves a breach-of-contract claim against the UM-insurance carrier. Further, as to that bad-faith claim, unlike the plaintiff in
 
 Safeway,
 
 the plaintiff here attempts to ground her bad-faith claim against the UM-insurance carrier on a default judgment that has established, although only as against the tortfeasor, the amount of damages the plaintiff may recover; this Court has subject-matter jurisdiction to assess the cognizability of such a claim, or legal theory, under Alabama law.